All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. Now I say to the United States Congress, I will report. Good morning, everyone. The panel has before it a single case for argument, Takeda v. Teva, Appeal 1104 from the current year. Mr. Loebenfeld, good morning to you. Good morning. Please proceed. May it please the Court, Eric Loebenfeld, Hogan & Hartson for the appellants, the Takeda entities, and Nethi Farms. If Your Honors will forgive me just to thank both Chief Judge Mischel and Judge Lynn for their wonderful remarks at the end of court the other night. My adversary, Mr. Melora, was one of the founders of that end of court, and it's really worked out well for the IP group in New York. Thank you very much. Your Honor, this expedited appeal raises, Your Honors, principally issues of claim construction, which of course are de novo review for the Court. Two issues. Just briefly, in terms of where we are in the market, Teva's product has still not received approval from FDA, so the status quo is the same as it was when we filed our motion for expedited hearing. That is, they're not on the market yet. And there's no stay of the district court order? That's correct. Issued by Judge Robinson or by us? That's correct. And so respectfully, that's why we move for expedited hearing. And so an expeditious ruling would be appreciated by both parties. We thank the court for granting the motion, obviously, on the Takeda side. So the first issue, this is a patent covering an orally disintegrating tablet, an ODT. Proton pump inhibitors is the class of drug that we're talking about. The particular drug prevacid is one of them. Prilosec, Nexium, Protonix. They're among the most successful drugs of all time. And they're aimed principally at something called GERD, which is gastroesophageal reflux disease. I think we're generally familiar with all of that. Sure. If we can just go right to the sort of crux of the argument. Yes, sir. Which is all about disintegrating agents and what that means. I guess the first general question I would throw out to you is what's the difference between a disintegrating agent and a dissolving agent? I don't know that the two are fundamentally different. I think in the context of what we've seen, if we look at the McCarty reference and what we look at with respect to the 632 patent, ODT, what's referred to as disintegrants in the R, I don't know that dissolving agent is a particular term of art. The word McCarty was a sugar pill. I was reminded of the M&M's commercial. It said they melted in your mouth and not in your hands. The API in the McCarty reference is soluble, and it's 99% sorbitol, which is sugar. But isn't there perhaps a difference in the mechanism of how these things operate in the sense that a disintegrating agent, as I understand it, acts to break up the matrix, to break up the structure that's holding the tablet together? I think in the context of this patent, we stated, based on references and the patent itself, that it facilitates disintegration. It facilitates the breakup of the tablet. That's the point. I can see where something that dissolves would, again, referring to M&M's, if you have a chocolate, certainly would dissolve. If that chocolate contained microcrystals or microgranules of some sort of an active drug, you could put it in your mouth, it would dissolve, you could swallow it, and it would work just fine. Now, I would not necessarily consider that a disintegrating agent in the sense that I gather from reading the patent in suit and some of the literature that is in the record, because it seems to me that to serve as a disintegrating agent, it's not simply melting, it's causing a breakup of whatever matrix it is that holds this together. I think that's right, and I think that the amorphous lactose in Starlac, if I can just step back for a minute, is different from the lactoses that are described in the literature contemporaneously. It's different from the Sorbitol that was at issue in the McCarty reference, which is one of the reasons why we don't think there was a disclaimer. There's no question. We're not disputing that the amorphous lactose in Starlac dissolves. It does dissolve, but it dissolves. The starch in it swells and expands. The amorphous lactose is the glue holding the Starlac together. Not the whole tablet, just the Starlac, which is about half of the tablet. And when it dissolves and the swelling agent swells, the starch swells, it does break up the tablet. Now, I don't believe, as we argued below, that there's anything in the patent that limits the disintegrating agent to anything candidly in particular. It only requires both a disintegrating agent and a swelling agent, and it requires that the two are responsible for causing the disintegration in less than 60 seconds. Well, let me ask you. The case is focused on the claim construction largely. What if one were to conclude that the district court's claim construction was correct, that there has to be a causation here instead of, as you argue, facilitation? Where does that leave you? I think we lose, Your Honor. Okay. I do. I think if Your Honors accept that the disintegrating agent, the amorphous lactose in the Starlac, must bear a strong causal relationship, must be the primary cause, must cause the disintegration, all the words that Teva argued that the court accepted, I think we have a hard time saying that the court was clearly erroneous in finding that we didn't meet that. And that's why it's so important that everybody in this case agrees that the patent and the claim do not ascribe any degree of causation, if you will, to either the disintegrating agent or the swelling agent. Excuse me. I apologize for interrupting your time. I appreciate it. Let me ask you this question, Mr. Lowenthal. Yes. What if one were to say that, yes, the district court's claim construction is correct in the sense that there has to be some degree of causation here for the disintegrating agent, but that there was no disclaimer of lactose? In other words, if one said district court's right on its causation with respect to claim construction, but there isn't a disclaimer, where would that leave you? Again, not to quibble with the words. The two together have to cause the disintegration. Frankly, when the case started and went to- The two together being- I'm sorry. The swelling agent and the disintegrating agent. I'm going to answer your question, Judge. I promise. Just a little bit of context, because when the trial started, we didn't think we had a difference, really a big difference, with Teva between cause and facilitate. Cause meant having a tendency to make it happen. Facilitate meaning having a tendency to make it happen. When we got to the trial, and I'm not accusing them of anything, I'm just saying, they really, respectfully, I think, from a non-infringement point of view, really pushed us to know that the disintegrating agent has to be the principal cause. There has to be a strong causal relationship. It has to do the job. So that if the starch in the Starlac was more responsible than the amorphous lactose for disintegrating, they would win, because what they claimed was the disintegrating agent, the starch, perhaps did have a stronger- I believe if we put aside the McCarty disclaimer, and we agree that the disintegrating agent has to cause in the sense of having responsibility for, then I think we win that way too. I think the problem with the claim construction is the courts accepting Teva's view that cause, that the disintegrating agent has to be the cause, the principal cause, the primary cause. And nothing in the patent says that. Well, what if one takes the position that there has to be a dual cause? I mean, both the swelling agent and the disintegrating agent have to act to cause. But lactose is not disclaimed. Then I think we win. I think we win because there's no dispute. And again, I don't think there's a fact question on whether the amorphous lactose and the starch in the Starlac work together to cause the disintegration of the tablet. I think the dispute on the fact side is whether the starch, which we say is a swelling agent and which the patent says is a swelling agent and lots of things say is a swelling agent, their view is that the starch acted as the disintegrant or the super disintegrant. Now, the only thing is, and correct me if I'm wrong, looking at the district court's opinion, it seemed that the judge said, well, you haven't met your burden of proof in showing what caused the disintegration here. And then the court seemed to go on, and maybe I have it wrong in your view, but let me know if I do. Then the court seemed to go on and say, well, but in any event, as kind of an alternative aside, lactose was disclaimed. So the court seemed to say two things. One, you didn't meet your burden of proof. But two, even if you did, to the extent it involved lactose, you disclaimed that when you were discussing the McCarty reference during prosecution. Yeah. No, that's correct. That's what she held. Do you read the district court's opinion that way? Yes. But if we think about it, since the claim does not ascribe importance or more importance or any particular degree of responsibility to either the swelling agent or the disintegrating agent, then it would have been just as correct. We said both must facilitate. There's nothing in the patent to say the disintegrating agent causes and the swelling agent doesn't or does something else where the swelling agent causes. What we thought was if they both cause, then they both facilitate. They work together to make it happen. And there's no reason, respectfully, in the patent anyway. So you're equating facilitate with be a secondary cause as opposed to the primary cause? No, you're wrong, because there's two of them. And our position on claim construction, again, we had a dispute with TEVA over the word. I'm just going to use my time. We had a dispute with TEVA over the word, whether the right word was facilitate or cause. We said both the swelling agent and the disintegrating agent facilitated. They said both the disintegrating agent and the swelling agent caused. So as I said, we didn't think we were that different for each other. And then it became an issue of whether one or the other was the principal cause, the primary cause, and not to be a broken record, but the patent doesn't say that. Everybody agrees, and again, this isn't a failure of proof I respectfully submit or something our expert didn't testify. This Starlac is unique. It's expensive. If all they needed was starch and lactose, they'd have bought the stuff cheap and used that. By coprocessing the two together, it enhanced the disintegrating qualities of the two. Dr. Chambliss, their expert, agreed that normal, regular starch alone, while it's known as a disintegrant and a swelling agent in the art, would not be a superdisintegrant, that it was the combination of the coprocessed lactose and starch in Starlac and it's the lactose that is physically changed by the coprocessing, and again, there's no dispute about that. It takes the crystalline lactose and converts it into this amorphous lactose and the crystalline lactose. The amorphous lactose holds the starch and the crystalline lactose, and when it's hit with the saliva, it breaks apart and the starch swells, and together the tablet, of which this is about half, disintegrates. And again, as I said, we never said the starch did less and the amorphous lactose did more. What we did say, and what the evidence says and the documents say, is that it's the two that cause it to happen, and we think that's all the claim requires. All right, why don't you take the last two minutes. Mr. Maloro. Thank you, Your Honor. May it please the Court, Thomas Maloro of Wilkie, Farr, and Gallagher, for the appellee Teva. I'd like to start with the notion of the fact finding that Judge Robinson made that the plaintiffs hadn't carried their burden of proof, even separate and apart from the disclaimer issue. Counsel made a remark to the effect that there was no fact dispute that the amorphous lactose had some responsibility. I would respectfully disagree with that. The evidence at trial was that it was the starch and not the lactose which is responsible for the disintegration of the tablet. Roquet, the manufacturer of the Starlac, consistently referred to the starch as being responsible for the disintegration, never referred to the lactose as responsible for disintegration. The expert for Takeda, Dr. Fasighi, admitted that he couldn't show anywhere that Roquet had referred to the lactose as being responsible for the disintegration. That's at record page A194. Dr. Fasighi also admitted that he had no evidence showing that amorphous lactose was referred to in the literature as a disintegrating agent. That's at record page A188. You would have thought that perhaps there might have been some testing done by plaintiffs to carry their burden. Dr. Fasighi admitted he did no testing on either Starlac or on the Teva product. Ethifarm's corporate designee confirmed that lactose is not referred to as a disintegrating agent in the literature. What role does lactose play in the Teva compound? The lactose is a binder. It helps when the tablet is compressed to hold the tablet together. It's the starch that's responsible for the disintegration. Dr. Chandler has testified about the role of lactose and what happens during disintegration. He did confirm lactose does dissolve in the Teva product. But Dr. Chandler stated and testified that the lactose not only is not helping with disintegration, it's actually working against disintegration because it is forming a more viscous material. That's at page 244. The starch in Starlac works well because it is co-processed. Roquette, the manufacturer, has confirmed, and I believe this is page 1425, that the co-processing makes the starch available to do its job. Starlac is a really good product. That's why Teva used it. It developed its own formulation, a formulation that is not referred to anywhere in the patent. I think there's no dispute about that. And the reason that Teva uses Starlac is because the starch does such a good job with the disintegration. What is your comment with respect to the prosecution history? The arguments, of course, are on the one hand, it's a clear disclaimer. On the other hand, well, no, no, no. It's that McCarty was a different product that dissolved, and that's not what we're talking about. Yes, Your Honor. I would have two comments with respect to the prosecution history. One is that the McCarty reference, which was the subject of a rejection during prosecution, was specifically distinguished by the patentee or the patent applicant at the time on the basis that it did not disclose a disintegrating agent. And in that amendment, there was a clear statement that McCarty did teach the use of lactose as an excipient. So you have a quotation from McCarty stating lactose is an excipient, and then a paragraph or so later, you have a statement that McCarty does not disclose a disintegrating agent. But if the same excipient can play different roles in different compositions, and in one composition serve as a diluent, another composition serve as a binder, another composition serve as a disintegrating agent or simply a dissolving agent, doesn't it depend on the context, and isn't that all that this prosecution history reveals, that the lactose in the McCarty formulation was simply functioning in a different way in that context, but not necessarily a disclaimer of lactose as a disintegrating agent in a different context? It is true that sometimes excipients can perform different functions. However, in this case, I think Judge Robinson got it exactly right in her footnote, I think it was footnote 22, where she said that the mechanism of what the lactose was doing was the same, both in the McCarty reference and in the Starlack and Tevis product. On what basis did she reach that conclusion? There was dissolution referred to in McCarty, and there was evidence at trial, I think from both parties' experts, that lactose dissolves in the Tevis product. So you have dissolution in both, you have a clear statement from the patentee that says lactose, my soluble sugar, the soluble sugar of McCarty is not a disintegrating agent of my claim, and by the way, that is exactly consistent with the way the patent was drafted, because there is reference in the patent and there is actually a specific claim, Claim 5, to direct compression sugars. That's lactose. Lactose is a direct compression sugar that was specifically identified as an agent separate and apart from disintegrating agents and swelling agents. So Claim 1 specifies a disintegrating agent and a swelling agent. Claim 5 adds a direct compression sugar. Well, let me ask you, if I could, the same question I asked Mr. Loebenthal. Let's assume one were to conclude that the district court was correct, that a disintegrating agent has to cause disintegration, and we would take the position that it has to cause disintegration to any extent so long as it does more than just facilitate. But if at the same time one were to conclude that there was no disclaimer, in other words, the judge erred to the extent she found a disclaimer of lactose in the prosecution history with respect to the McCarty reference, where would that leave you? That leaves us with a fact finding that Takeda had not carried its burden of proof at trial, that with respect to lactose being a disintegrating agent causing disintegration, that fact finding is not clearly erroneous and, in fact, is entirely consistent with the record. Lactose is not characterized as a disintegrating agent in the prior art. Judge Robinson found that the record as a whole indicated that lactose is not considered. She seemed to say I can't really tell what causes the – it's an open question. It seemed to be an open question in her view as to what caused the disintegration in Starlack, right? At one point she said that it's at least as likely that the starch causes disintegration as the lactose, but before that she seemed to have said I can't really for sure say it's at least as likely that starch does it, hence then she sort of didn't find – she wasn't comfortable with Dr. Fassihi, is that it? Dr. Fassihi was Takeda's. She wasn't comfortable with his approach or his theory, so she basically seemed to say I don't know what really the deal there is, but in any event, Takeda hasn't proved its case. Do you read it that way? In the end, Judge Robinson absolutely said that it's Takeda's burden to prove infringement. They haven't carried that burden here. The record evidence clearly supports that conclusion. It is – it cannot, in our view, be the case that that finding is clearly erroneous given that the manufacturer said that starch is the disintegrating agent, given that Dr. Fassihi not only had no testing but had no references in the literature to amorphous lactose being a disintegrating agent. What was the basis of his conclusion? It was, with due respect, his expert testimony and his analysis of the documents, but when asked – But if he can't point to anything in the prior art and he didn't do any testing, then what is he relying on? That was our question, Your Honor. What did his report or testimony say he was relying on? He did refer to some literature and to some of the Roquette materials, but when questioned at trial, he admitted that Roquette never referred to the amorphous lactose as a disintegrating agent. And when questioned at trial, he admitted that amorphous lactose was not referred to in the literature as a disintegrating agent. So there were materials attached to his report, for sure, and he referenced materials. He referenced a table, which was not specifically about amorphous lactose, but it was about diluents. And it said some properties of diluents, and Judge Robinson referred to that in her decision when she said that there has been some reference to lactose as having disintegrative properties in the literature. But she analyzed all of that evidence and the entire record, and so the record as a whole, however, shows that lactose is not referred to in the prior art as a disintegrating agent. So the weight of the evidence was firmly in favor of lactose as not a disintegrating agent and that starch and Starlact is the disintegrating agent. Meaning what by is the disintegrating agent? Did your expert say that all of the disintegrating impact was caused by the starch? I believe he did because the issue was over lactose, and he specifically said that lactose is not participating as a responsible agent. In fact, it is working against you in terms of disintegration. Because of the viscous nature of the initial saliva dissolution? Correct. I believe that's page 244 of the record. Mr. Rohr, what do you say is the difference between facilitation and cause? I mean it seems to be one can make the argument that if something facilitates, it's in some degree causing something. How do you draw the line between something that facilitates X as opposed to something that causes X? It depends on how far you carry the word facilitates, I think. For example, the Remington's treatise that was cited by both parties has a section on disintegrating agents. And in that section it says, well, disintegrating agents facilitate disintegration. That was one of the references relied on by Takeda. But then on that same page they say, well, there are other attributes of tablets which can affect disintegration time significantly. And they point to other components like binders and lubricants. And they point to even non-excipients like tablet hardness that could affect disintegration time. So there can be an effect on disintegration time, it's recognized in the literature, by things which aren't causing disintegration at all. So the disintegration agents as used in the art generally and as specifically referred to with Starlack, they're added specifically to cause that disintegration. I mean, I thought that the argument as between cause and facilitate was confusing and not helpful at all. It seemed to me that the distinction was whether something acts to break up the matrix or not. It seemed to relate to the mechanism. That's what the patents seem to suggest. That's what the literature seems to suggest. And I was a little surprised that the argument sort of devolved down to this cause or facilitate, which as you just pointed out in some of the reference materials, the word facilitate is used to describe the disintegrating agent. Which in essence is describing causative agents which are added to break up the tablet. I think that is the function of the disintegrating agent. It's the mechanism. It's added as a component which might have a mechanism such as swelling, but it's added to cause the tablet to break apart. And that seems to suggest, just one quick comment, that seems to suggest that there's some redundancy between disintegrating agent and swelling agent. If the mechanism is the physical breakup of the matrix, there seems to be some redundancy there. And of course the record here also supports that notion in that the swelling agent is referred to, the starch is referred to as a disintegrating agent. The claim does require these two agents, and the claim requires that they are responsible for the disintegration in less than 60 seconds. I think Judge Robinson got it right, and perhaps you're referring to Dr. Pesicki's testimony, that the disintegrating agent induces that breakup. The swelling agent ensures that it happens in under 60 seconds. The disintegrating agent is responsible for that disintegration. The swelling agent says it's going to happen in under 60 seconds. The court has no further questions. Is the essence of your position that to qualify as a disintegrating agent, the chemical must work by mechanical force as opposed to chemical change? No, Your Honor. We don't believe mechanical force is required for an agent to be a disintegrating agent. I don't think I understand what your position is. If both agents are at work and they're tending to produce in tandem disintegration, then what's wrong with Decada's position? The disintegrating agent, Your Honor, with respect to the claim, is the agent which is causing disintegration. The swelling agent is also participating to ensure that that takes place in under 60 seconds. With respect to the Teva product, the starch is the only agent which is participating at all. It is not only causing, it is responsible for that disintegration. A hundred percent? Yes. The testimony was that the lactose, from Teva's side, that the lactose is working against you in terms of disintegration. And there's a fact finding that Decada did not meet its burden of proof that lactose has any causative role here. Now, opposing counsel makes a big distinction between the crystalline lactose and the amorphous lactose. Does the Teva product contain both types, or only one? And if so, which one? It contains both types, Your Honor. Decada referred to and relied on the amorphous lactose for their theory of the case. So that was where the rubber hit the road in terms of the issue between the parties. All right. Thank you. Rebuttal? Yes, Your Honor. Thank you. I'm going to speak very quickly in my two minutes, if Your Honors don't mind. Just one thing real quick. Dr. Chambliss did testify that the amorphous lactose inhibited the disintegration, that it worked the other way, and he was proven to be completely wrong about that. And I refer you to it. It's in the record. His testimony was at 231 of the record. What the reference, which was an exhibit that he used, said was that at high compaction levels of the tablet, the amorphous lactose would produce a gel that might block the disintegration. But the same reference, which is Fenton's Exhibit 49, 1339 of the record, states, quote, at low compaction pressure, tablets containing amorphous lactose disintegrated before gel or precipitate could block the pores. And that's, as I said, it's at A1339. When we put Dr. Fasidi on a rebuttal, it's the only thing I asked him, because Tevas Anda showed that the Teva product was made with low compaction, which means that based on the document Dr. Chambliss used, tablets containing amorphous lactose disintegrated before this inhibition. Let me ask you a question that goes to whether something is a finding of fact or something other than a finding of fact. I want to read you two sentences from page 16 of Judge Robinson's opinion, two successive sentences. And the question is, is this not a finding of fact, what the two sentences say? It's in the first full paragraph at the conclusion of the paragraph, the last two sentences. And it reads, the court is likewise skeptical of Dr. Fasidi's untested theory attributing the disintegration of the Anda product to the amorphous lactose content in Starlac, period. Indeed, it is at least as likely that starch, traditionally known in the art as a disintegrating agent, fills this role, period, end quote. Do you agree that those two sentences constitute a finding of fact? I would say probably, but to the extent she used McCarty to disclaim lactose as a disintegrating agent, I think that was a conclusion of law, and I do think that the entire opinion is... But that's after that. Yeah, no, no, I understand. Absolutely, of course, that's true, Judge. But the McCarty disavowal of lactose and the role of lactose imbues this decision. It's the basis of the decision. It was not respectfully an afterthought. It pushed strongly in favor of the judge's finding that lactose was disclaimed. Well, what's your basis of saying that? It looked to me, reading her opinion, that she found two separate, independent, sufficient grounds of the finding of non-infringement. One was the disclaimer, and the other was the deficiency that she saw in Dr. Fassihi's testimony. But you seem to say, oh, no, it wasn't two separate grounds, it was all one ground altogether? I apologize, Your Honor. Her reference to Dr. Fassihi's testimony would constitute a finding of fact. What I'm saying is, because she believed that the disintegrating agent has to cause it, I think that this opinion is imbued with that. If you accept our position that the two things work together, that it could contribute one and the starch could contribute the other. I'm just asking about two sentences. And I asked you if it was a finding of fact. I thought you said yes, and then you walked away from that and said somehow it's tainted by something else. Does that make it a conclusion of law? Does that make it an exercise of discretion? Are you saying, Mr. Lomfeld, it is agreeing with the Chief Judge that it is a finding of fact, but that it's undergirded by an erroneous claim construct? I think that's right, because she's saying she's skeptical of his untested theory attributing the disintegration to the amorphous lactose. I think she's skeptical of his saying that it contributes to the disintegration. And that gets you into the facilitation. I think it does, although obviously I appreciate the Chief Judge's position. I see I'm out of time. Your position, if these two sentences that I read to you are a finding of fact, then your position has to be that in the view of the record as a whole, it's clearly erroneous. Because if it's not clearly erroneous, I think we are required to affirm. I said that at the beginning without doubt. The notion being that if the claim constructs, Judge Shaw asked if the claim construction, if Judge Robinson's claim construction holds up, that the disintegrating agent has to strongly cause, be the primary cause, all of that, can I ask you to rule for me? And I said no. And I think that's right. But I think if you change the claim construction and accept ours, then what she said is clearly erroneous because the testimony and the evidence about the role of the amorphous lactose is one way. But what if one changes the claim construction to a limited extent and says it has to be a causing factor but not, as you say, just a facilitator? I think we win. And by the way, if I may, Judge Lynn, when you talked about breaking up the matrix, the matrix is the tablet, not the starlight. So we think the evidence was unequivocal based on the same ROCET document that the amorphous lactose, because of the coprocessing, dissolved, the starch swelled, and they were responsible together for breaking up the tablet, the matrix being the tablet, not the starlight. What do we know about FDA approval? Anything? Last I heard, no FDA approval. Well, I understood that. That was stated before. But is there any expectation as to when the approval might be forthcoming? You never know with FDA, but it could be forthcoming at any time. What's the norm? Is there a norm gestation period for their decision? Not in my experience, no. All right. Thank you both. We'll take the appeal on your advice. Thank you. All rise.